Case No. 15-1112, et al. National Labor Relations Board Petitioner v. CNN America, Inc. Mr. Shan Mugam for petition of CNN America, Inc. Ms. Hoyt Hayes, Respondent, NLRB. Mr. Bolick, Intervener, Local 31. Thank you, Your Honors. Kenneth Shanmugam of Williamson-Connolly, Cross Petitioner, CNN America. May it please the Court. The position of the National Labor Relations Board in this case is utterly untenable. In the order under review, a divided panel of the Board ruled that CNN was a joint employer of production employees supplied by third-party contractors, summarily dispensing with the preexisting rule that a company could be liable as a joint employer only if it exercised direct and immediate control over the terms and conditions of employment. The Board then ruled that CNN became a successor employer by engaging in blanket discrimination against union employees, even though CNN employed a neutral hiring policy and hired union members at nearly four times the rate of the average applicant. And the Board compounded its errors on liability by ordering a punitive and burdensome remedy. The Board acted impermissibly by applying an expanded standard of joint employer liability to CNN retroactively and without reasoned explanation, and its error on the issue of joint employer liability fatally infected its analysis on the issue of successor employer liability as well. And for those reasons, the Board's order should be vacated. I'd like to start, if I may, with the Board's ruling on the joint employer issue, because in our view, that ruling is simply indefensible. Now, the Board defends that ruling before this Court solely on the ground that direct and immediate control was never a requirement for joint employer liability. But the Board itself took a contrary position when it dispensed with that requirement in the Browning Ferris Industries case. And I can really do no better than to point this Court to the Board's ruling in Browning Ferris Industries, which I think very lucidly lays out the history of the Board's treatment of the standard on the joint employer issue and makes clear that the Board, for a substantial period of time, applied the direct and immediate control standard. And contrary to the Board's argument before the Court in this case, that standard was not simply one that was articulated in a footnote in the Airborne Express decision. While it is true that that is the first time that the Board used the words direct and immediate control, that standard, as the Board makes clear in its decision in Browning Ferris Industries, in fact, dates from the Board's prior decisions in cases like TLI and LARICO, cases dating back to the 1980s, that made clear that mere limited and routine supervision is insufficient to give rise to a joint employer relationship. And the Board… I just want to be sure I'm understanding. You think clear and routine? Was it clear and routine? Limited and routine supervision. You think that is the opposite of immediate and direct, and there's nothing in between those two? We don't think that there's really anything in between those two. And again, if you look at the Board's treatment in the Browning Ferris Industries decision, and this is in the slip opinion starting at page 10, the Board really treats all those cases together. At page 10, the Board says that the Board took Board law in a new and different direction, starting with LARICO and TLI. And that's really what the Board is talking about in the subsequent lengthy discussion when it goes through the Board's cases and it goes through both the cases after TLI and LARICO, up to Airborne Express, and then the cases after Airborne Express. And, of course, in adopting the new two-part standard in Browning Ferris Industries, the Court ultimately concludes by overruling LARICO, TLI, A&M Property, and Airborne Express and other Board decisions to the extent they are inconsistent with the decision today. And, of course, ironically, that was not just the Board's position in the Browning Ferris Industries decision itself. That was the General Counsel's position in his briefing in Browning Ferris Industries, not only before the Board but before this Court as well. Mr. Shemmigan, you argue that the Board put aside the direct and immediate control test, but that's not the way I read what the Board did here. I mean, I think the Board raised a question about the legal underpinnings of the direct and immediate control test, but it's clear that in the proceedings all the way that there's many, many findings of direct and immediate control that ultimately I think what happened here was that the Board did apply the direct and immediate control test and found it to be met and invited challenges that, in fact, we're going to see in the Browning Ferris case on the legal, evolving legal issue, trying to clarify that. But here it seems to have been applied. I disagree with most of that, Judge Pillard. Let me explain why. I think that the Board dispensed with the direct and immediate control standard in footnote 7, and to be sure the Board then proceeded to analyze a variety of factors. It analyzed hiring and firing. It analyzed supervision. It analyzed assignment of work and the like. But in analyzing those factors, the Board did not apply the level of, did not require the level of control that the direct and immediate control cases require. And so we're not disputing that the Board considered the right factors. The Board simply didn't analyze those factors with the right level of stringency. And so the Board concluded, for instance, with regard to hiring and firing, that CNN's determination of the appropriate staffing level was sufficient to satisfy that factor, even though TVS unquestionably had ultimate authority over hiring and firing decisions. And if you look at the cases applying the direct and immediate control standard, like Southern California Gas and Flagstaff Medical Center, that is insufficient. And I can walk you through all of the factors and point to cases in the direct and immediate control body that say that the level of supervision at issue here was insufficient, for example. And so that's why this choice of standard really matters. And so, again, it's not that the Board took a variety of illegitimate considerations into account. The Board simply didn't apply the appropriate level of scrutiny. And I think what's so odd about all of this is the sort of the procedural history, and I want to touch on that just a little bit because the way that the Board dealt with this case was very irregular. At the time the Board issued its decision in this case, it had already ordered supplemental briefing in the Browning-Ferris Industries case on the question of whether the Board should, in fact, revisit the standard. And, of course, the General Counsel had filed a brief in Browning-Ferris Industries saying, here's the current standard in the Board's own words at page 8 of that brief, and here's what we think that the standard should be. Of course, in Browning-Ferris Industries, the Board proceeded to change the standard and to adopt a two-part test, the first part of which was the requirement from the cases predating the direct and immediate control cases that you look at whether the alleged joint employer shares or co-determines those matters governing the essential terms and conditions of employment. But the second part of the test is whether the alleged joint employer satisfies the common law standard for being an employer. And, indeed, it's arguably that part of the test that really puts at least some degree of teeth into the new joint employer standard. That's the new standard. Here we're just trying to sort of figure out, at a time when that was not yet clear and certainly not applied in the trial proceedings, what was applied and whether there's an error there. Agreed, Judge Pillard. Agreed, and I think that the standard that the Court applied looking at the Board's opinion at page 7245 was simply the first part of that standard, namely whether CNN shared or co-determined those matters governing the essential terms and conditions of employment. So, if anything, the standard that the Board applied in this case seems to be even more expansive than the standard, the Morrill Act standard that the Board ultimately applied in Browning-Ferris Industries. What we have here, in Justice Scalia's words, is a tertium quid. We have, like, some third standard. It's not the direct and immediate control standard, but it's also not the standard that the Board subsequently adopted in Browning-Ferris Industries. And, of course, to step back, our argument here is really, I think, a straightforward one. It's that the Board should have applied the preexisting standard, the direct and immediate control standard, that we would plainly prevail under that standard. But, of course, the Board could have chosen to try to apply a different standard in this case. Instead, the Board simply tried to sweep this case under the rug and to kind of get rid of it while it was considering whether to change the standard. If the Board had wanted to apply the Browning-Ferris Industries standard in this case, it would have had to say, number one, we're going to change the standard and to engage in the sort of explanation that it did ultimately in the Browning-Ferris Industries decision itself, and then, number two, and critically, to explain why it would be appropriate to apply that standard retroactively in an unfair labor practices case. And that's what you want from us if you prevail on this argument, is a remand for them to, if they'll presumably change, although who knows, to the Browning-Ferris standard and then apply that and consider the retroactivity. So, Judge Cavanaugh, on the joint employer issue, we really do think that the Board should have applied the direct and immediate control standard because we think there would have been retroactivity concerns with changing the standard. Yeah, I'll fold that in. Somehow they have to consider whether they have to apply direct and immediate control, and if so, apply it. If they can change, they would have to deal forthrightly with the retroactivity process. I think that would be an appropriate disposition in our ideal world. What's the preferred disposition? The preferred disposition would be to say you have to apply the direct and immediate control standard and we plainly prevail under that standard. And how can we say that here now? Well, I think you can say it on the ground that it would essentially be futile to remand this because it's so clear that we would prevail under that standard and that applying a more relaxed standard would be impermissibly retroactive. So you want us to deal with all the retroactivity, at least that's your preferred? That would be our preferred option, but I think it would be a perfectly appropriate and certainly a procedurally regular outcome for this Court to say to the Board, look, go back and be at a minimum clearer about what standard you're applying, knowing that if you want to try to apply a relaxed standard in this case, you're at a minimum going to have to provide a reasoned explanation as to why it's appropriate to apply it retroactively. And as we explain in our brief, there are good reasons to be concerned about retroactive application in an unfair labor practices case as opposed to a representation case like Browning-Ferris Industries. And so I think that that would essentially enable the Board, however it is constituted, to make a determination at the appropriate time about what standard it actually wants to apply in this case. And I would note as well that on the successorship issue, we think that that determination really does fall together with the joint employer determination, such that if this Court decides even to remand on the joint employer issue, it would be appropriate to remand on the successorship issue as well because one of the three considerations that the Board relied on in making its finding of blanket discrimination was the determination that there was something improper about the termination of the contracts here, a premise that really depends centrally on a determination that CNN was a joint employer such that the termination was improper. How did that come into the determination of whether they were successor? How did that come into the successorship analysis? Yes. Well, if you take a look at the Board's opinion at pages 7260 to 7261, and this is the beginning of the discussion on successorship and specifically on the question of whether CNN was a successor through blanket determination, which, as the Court will be aware, has considerable consequences. In the carryover paragraph, the Board relies on the termination and the supposed secrecy of the termination. And in fact, as you'll see in the fourth line of the first column on page 7261, it actually refers back to the discussion on the joint employer issue. It says, as stated above, CNN never terminated or directed the termination of any TVS unit employee for failing to keep up with those changes or inability to perform the work. So is that not just one way that there can be successorship? The other way is if the historical bargaining unit was appropriate and if there was a majority in that. So they're two separate questions, Chief Judge Carlin. I want to focus on the second one. Yes. That one, the law is, if it is an appropriate bargaining unit, right, and if more than 50 percent of the employees were the original ones, then it's success, plus the other aspects of successorship. Yes. Now this is, I'll work my first point into the second, which is that it's critically important to keep distinct the question of whether CNN was a successor that engaged in blanket discrimination or whether CNN was a successor in the more traditional way you've just laid out. It cuts to the remedy, right? It is very important to the remedy because the only available remedy in the latter circumstance would be a bargaining unit. I understand that, but you started with a pretty blanket statement that if they lose joint employer, they also lose successor, and that's what I want to begin with. As I read the opinion, the board adopts the ALJ's determination that the historical bargaining unit is appropriate, both because they, in footnote one, adopt the findings and conclusions of the ALJ, and second, as you point out in footnote 36, they say that CNN is wrongly arguing that the larger unit is the appropriate one and instead that the TVS employees constitute a majority of the historical bargaining unit. They cite the ALJ for that proposition, and the ALJ does conclude that the historical unit is an appropriate one. So I don't think that that's quite right, Chief Judge Garland, but first let me clarify what I said at the outset because I do think this is really important. We think that the discrimination finding would fall, not necessarily the entirety of the determination on successorship, if the court agrees with us that the joint employer determination was flawed. So I just want to be very clear about that. On the question of what I'll refer to as sort of more traditional successorship, whether we became a successor because a majority of the TVS employees, of the employees of the historical bargaining units were TVS employees, we did argue that the bargaining unit, the only appropriate bargaining unit, was a broader one. The ALJ did not address that issue. The ALJ sort of blew it off by concluding, and this is at page 7347 of the joint appendix, that CNN's purported discrimination prevented it from challenging the historical bargaining unit. That's one of the arguments the board makes, but then the ALJ makes, but then says, nevertheless, it's well recognized, long-established bargaining relationships will not be disturbed where they are not repugnant to the Act's policies. The board places a heavy evidentiary burden on a person, party, attempting to show that historical units are no longer appropriate. And then I read the next three pages as explaining why the historical unit is appropriate. Well, even if you read the ALJ's opinion that way, I would fall back on our argument concerning footnote 36, and I would respectfully submit that that falls short. Because it's a footnote? Not because it's a footnote. That would be hard, since in airborne, the words that you want come on a footnote. And as you know, Your Honor, all of the good stuff is always in footnotes, whether in court opinions or even in administrative adjudication.  But I will say that when you look at the footnote, and when you look at really, it's really two sentences of the footnote on which the board relies, we think that that footnote, fairly read, does not stand for the proposition that the board considered and fully rejected the argument that a wall-to-wall unit was the appropriate one. It was, in context, merely responding to what Member Miscamara said about why the determination on mass anti-union animus or blanket discrimination was inappropriate. But even if that were true, we traditionally regard a sentence like, the board has decided to affirm the judge's rulings, findings, and conclusions as sufficient if the ALJ's findings and conclusions are sufficient. And they do make that point in another footnote, footnote 1, which is where they typically put these things. Well, you know, that's fair enough. But I think that in a minimum, if the court is going to send this case back to the board in any event, it ought to allow the board to fully consider that issue and to specifically address our argument as to why a wall-to-wall unit was the only appropriate unit here, particularly given the fact that notwithstanding the presumption in favor of historical bargaining units, we cite ample authority really in this specific context of broadcasting and production employees for the proposition that wall-to-wall units are the only appropriate units. Were those successor cases? I don't believe that they were successor cases. That's different because there was no incumbent union. So there's no historical bargaining unit at that point. And in our cases, I don't think we could use stronger language about the presumption that you have to overcome. But the presumption can still be overcome. Of course, that's why it's a presumption. Yeah, and our submission is that, you know, at a minimum, again, if this case is going to go back to the board, I don't think there's any harm in allowing the board fully to consider that issue, knowing that the board is also going to have to consider the issue of the propriety of the remedy. And, of course, we have all of our arguments. Well, we can send it back. You're obviously right about the 8A-5 claim about discrimination, and that would have to go back if the joint employer falls. And you would also be right about the 8A-3 claim by terminating their employment. But the remainder of the case doesn't depend on joint employer. Most of it depends on successor employer. And we don't typically send something back sort of just for the heck of it. We only send it back if we find an error and with our deferential standard of review. And I just think, Chief Judge Garland, that, you know, applying Chenery, I just don't think that it's sufficiently clear here that the board, in fact, made an affirmative determination that we were a successor in that traditional way. You think, as a gentleman, we do this a lot, so for the future I'd like to know. We typically, and many of the board's opinions, in fact, one of the board's opinions that you cite is basically like six sentences long, and then there's a 100-page ALJ opinion. And all they say in the six sentences is we adopt the ALJ. We typically don't require the board itself to do more than that. Do you think that we need to if the ALJ has addressed the question? But I think you have to look at what the board actually says in its opinion. I think it's one thing when you have a case, and there are certainly plenty of cases that we cite on the joint employer issue that are in this category where you have the board essentially doing nothing more than incorporating the ALJ's underlying decision. Here, to be sure, the board incorporates the ALJ's credibility determinations and the like in Footnote 1, but you have to look at the board's actual analysis. And again, Chief Judge Garland, I think fairly read, when you look at the board's overall analysis on the successorship issue, it is really resting on the discrimination finding. And again, if the board on remand wants to say, come back and say, and of course in some sense the issue of whether CNN is a more traditional successor is an issue that you really only need to get to if you conclude that CNN did not engage in blanket discrimination because the remedies, as Judge Kavanaugh pointed out, are more narrow. And so at a minimum it just seems to me appropriate for the board to be given the opportunity to consider this issue more fully on remand and then to decide what the appropriate remedy is, an issue that the board would only have to get to if on remand it concludes that we are neither a joint employer nor a successor that engages in blanket discrimination. On the wall-to-wall employer question, it seems there's a little temporal fudging going on in your position to the extent that don't we look at the moment when CNN takes over? And at that moment it had not reorganized its workforce at all, and so the logic of the preexisting bargaining unit was still just as forceful as it had been. I mean, over time you're saying, well, you know, things are evolving, we're trying to do this differently, but not at the relevant time for purposes of measuring successorship. I mean, I think you have to look at the workforce as it is at that point, but of course you have to take into account at least to some extent the reconstituted workforce because otherwise you would never have a basis for changing from the historical bargaining unit. In other words, to get back to Chief Judge Garland's question, I think that the way that this works in the successorship context is that you have to apply the familiar community of interest standard and to apply it looking at the workforce as it is after the successorship occurs. And of course our argument is that when you take the positions that are the historical bargaining unit positions in that reorganized workforce and you look at the other production employees at CNN, there is a complete community of interest. There is no basis for distinguishing between the former positions and the latter positions. And again, that's an issue that the board can analyze in greater detail and reach a contrary conclusion on in the event that this court sends the case back, and then the board can proceed to address the question of whether it thinks that a bargaining remedy is appropriate. And of course if this court remands, it's presumably not going to reach any of the remedial issues  And so the board will have the opportunity to address those issues in the first instance should the case go back. Okay. Thank you. We'll hear from the NLRB. May it please the court, I'm Joan Hoyt, and I'm reserving three minutes of my time for intervener's counsel. Your Honor, for more than 30 years, CNN relied on a contractor to provide it with a unionized workforce. And then it determined to get rid and rid itself of the union obligations of that contractor by firing all the technicians that had been provided, changing their job descriptions, and replacing them through a hiring procedure, the implementation of which was patently and pervasively riddled with union animus. Substantial evidence supports the board's finding that this conduct was unlawful. So on the joint employer issue, why don't we take the easy path and say the board itself in Brown v. Ferris said that the direct and immediate control standard had been the standard and was going to change it. And here the board did not apply the direct and immediate control standard. So it's got to go back to the board for them to decide either we're going to apply the direct and immediate control standard or we're going to apply a lesser standard. And if we apply the lesser standard, they have to confront retroactivity issues. Why isn't that just the – given what Brown v. Ferris said, it's not us making up what the board precedent is. The board itself described its precedent. I think Brown v. Ferris, if you read it, literally says that Airborne Express, TLI, and LARCO had been out there. I am not disputing that that case with direct and immediate control was there. But this circuit has endorsed in Dunkin' Donuts, which does not show up in – In Dunkin' Donuts, the underlying NLRB case was before Airborne. I'm sorry? In Dunkin' Donuts, the underlying NLRB decision was before Airborne. That's correct, Your Honor. But this court's decision in that case issued in 2004 after Airborne was issued. And so if we take the argument that my opponent is making to its logical conclusion, then the court could have and perhaps should have done there what they're asking us – asking you to do here. Nobody was making the argument in that case. I thought your position was that, in fact, ALJ and the board effectively applied a direct and immediate control analysis. I mean, if you look at the board's decision, talk about CNN playing a decisive role, its direct role in the assignment, direction, and supervision of the TVS employees. CNN was properly named as a joint employer here as it, quote, played a direct and key role in the events alleged. So I thought the position was, whatever the standard is, the narrowest standard, direct and immediate, that the ALJ's findings meet it. I think what needs to be understood here is that Brown v. Ferris I, which is the Third Circuit's case in 1982, set up the standard which practically all circuits have followed, which says a joint employee should be determined if it shares and co-determines the essential elements in a significant way. Now, TLI, LARCO, and Airborne Express all cited to Brown v. Ferris. So Brown v. Ferris I. So Brown v. Ferris I is the overarching standard that the board has applied time and time again. But Brown v. Ferris, the board's decision, is very clear that the standard has been added to. In fact, it talks, as you do, about Brown v. Ferris I and then says, but requirements have been added over time. We're now going to eliminate those requirements, in essence, the direct and immediate control test. And in the case we have, the board did not apply the direct and immediate control test, at least as I read it. Your Honor, the direct and immediate test was out there, but if you are asking me to say that was the test, it was not. I think what he's asking you to say is, did the board in this case, in the case in front of us now, apply the direct and immediate control test? Well, the language of the board's order certainly seems to infer that, along with the share and co-determined, some parts of the analysis dealt with directly influences. So I think it's worked in here. I guess maybe I should ask, you didn't argue in your brief. I did not argue, Your Honor, but as Judge Pillar just said, she cited parts in the board's decision where the word direct, there's no control. I'm sorry to interrupt. The board did not say, we're applying the direct and immediate control test to these facts, and the test is met. It never said anything approaching that. The board didn't, because as I said again, the standard that the board has used again and again, and we cited all those cases in our brief, is to share and co-determine those facts. So I think that would be an interesting argument, and I would have been struggling with it, but I don't even think I necessarily need to struggle with it, because the board itself said what you just said is not right. The board itself said, actually, we have been applying a direct and immediate control test. That has been the test. And that's in Brown v. Ferris, I mean. So you make a good point, I think, in terms of could have struggled through these board precedents and found snippets here and snippets there to try to figure out what was going on, but the board itself in Brown v. Ferris was very explicit, which it was not in this case, about what it wanted to do, standard-wise. Well, I think the board was clear, because it starts out on page 7245 to say that the standard that it has applied is where, if the evidence shows that employees share or co-determine those matters governing essential terms and conditions, and if they do so in a meaningful way on such factors as hiring, discipline, supervision, and direction, then that would determine the joint employee status. So what the board applied to Brown v. Ferris, I am not… the question that we have here, because it's sort of, as you say, it's sort of the overall capstone description of shared responsibility. I thought, in your brief, you say, you know, the board found CNN was a joint employer because it was intimately involved in practically every important aspect of the employment relationship. I mean, again and again, there are references in the board's decision that really do track direct and immediate control. I mean, these are all different locutions, but, you know, the analysis and the findings are very… So I don't know why you're resisting the notion that direct and immediate control was, in fact, what was being implemented here. And I don't understand you to have an argument that, if they were otherwise, that you avoid a remand. Well, Your Honor, I can only represent my client as the decision appears. And if you notice, while direct and immediate control was raised, the board dropped footnote 7, in which it said that the direct and immediate control had arose in Airborne Express from where we know not. So they're just saying, you know, if people want to try to rationalize this, like, by the way, footnote, there's a little bit of a mess here. But in the work that they're doing in the text, as I said, CNN played a direct role in assignment, direction, supervision. CNN was properly named as a joint employer here as it played a direct and key role. I mean, I don't see a lot of daylight between direct role and all of these. And then the findings, you know, as you and intervener correctly detail, CNN set the number of hours TVS technicians worked by insisting they worked 40 hours but getting approval from CNN for any overtime. When technicians called TVS assignment desk, their calls rolled directly to CNN assignment desk. CNN's, there were no TVS supervisors at the various satellite studios. So CNN producers gave the technicians their assignments. In emergency situations, they reassigned TVS technicians. CNN reassigned TVS technicians without checking with TVS. CNN directors called sick TVS people and said, come in, we need you right now. They demanded specific technicians. So it seems like the findings, when you read them, are all about direct and immediate. And I'm just not sure what, you know, why the flagging of this sort of messy issue that's being taken up in Browning Ferris is not just sort of a sideshow. Well, I do think it's a sideshow, Your Honor. But that said, much has been said about remanding this case so that the board can look at it under direct and immediate control. Were you to do that, it would come out even stronger than it is right now. Because having read CNN's position and the parts of a brief that you cited to, which is gleaned from the record, would support the Browning Ferris. But we can have the board do that. And then a reviewing court could analyze that under the correct standard. But that, at least as I read it, I didn't read the board ever saying we're applying the direct and immediate control test here. And I think you agreed with me on that. Well, I could not do anything else because you were reading from the record. And I cannot. So you were listening to the previous case in which the suggestion was made that if a remand would come out the same way, there's no reason to remand. Is that where you get that idea from? Yes, Your Honor. That was only if it's not raised. It wasn't raised in the prior case. It's raised here. So the distinction is not apt. That's correct, Your Honor. I want to move on to the successorship, if I may. Because I noticed that when my colleague was up here, you had several questions about that. And I think the arguments he gave you for the analysis of successorship in this kind of case is completely wrong. This is the kind of case that the board calls or has been referred to as a U.S. Marine case. And in such a case where you have a Burns successor, which we have here, because CNN continued to perform the same operation on the day that it terminated the contract. And it continued to do so with a majority of its contractors' employees. Now, CNN's whole argument is based on this fact that you would agree that the wall-to-wall unit, which they unlawfully created by inverting none bargaining units into, is the unit. But the law is clear that in a situation like that, the historical unit is the presumptive unit. And we cannot go back to determining what unit should be. So its argument about a wall-to-wall unit should be completely gotten rid of. Because even the sentencing member in this case, and contrary to what my opponents said to you, there was not a unanimous decision on successorship. There wasn't. I'm sorry. Let me correct myself. There was a unanimous decision on that. Because even member Ms. Kamara came on board and said this is a successor. But only on the traditional successor analysis. That's correct. Which has, just correct me if I'm wrong, that has far different implications for the remedy than the successor discrimination analysis. That's true. But my opponent did not admit to that. And the part of it that I think for the remedy, that's important. They did say that, yeah. Oh, I did not hear that. I'm sorry. But where you have the blatant anti-union hiring here. Let's speak about, if I may, how CNN conducted its hiring process. They hired a lot of union people. I don't understand that necessarily. The stats are that they hired a great number of former TVS employees and a great number of union members, including I think the majority of the union leadership. That is true, your honor. The fault in their hiring lies in the fact that they were tracking every hire they did because their position was that this was going to be a wall-to-wall unit. And as long as we keep the contractors' employees to the minimum in this unit, we are going to be able to argue wall-to-wall. They ignore or perhaps were ignorant to the fact that where you have a Burns successor and you continue to do the same work and you hire a majority of the historical unit, you cannot accrete the unit by bringing in people who were not a part of the historical unit. That is what we have here. So it was a ruse just to expand the unit so they could come before the court and say, by the way, the appropriate unit, or please have the board determine the community of interest. Community of interest is never an analysis in this kind of case, on this kind of successorship case, where the hiring was so fraught with anti-union animus. As to the remedy, CNN argues that the board did not do its diligence in explaining the remedy. The case that it cited to is Capitol Cleaning, and holds that out as the precedent for you to follow. As we have argued in our brief, Capitol Cleaning also doesn't apply here, and cannot apply and has never applied in a situation if you agree with our joint employer status. But even if you were not to, and you look at the Vincent Plastic case, which they also suggested could be an analysis here, that also has never been applied in a successorship case, because the board and the courts have agreed there is no reason for an explanation where you fired your predecessor's employees unlawfully, or failed to hire them unlawfully, tell them there would be absolutely no union, and proceed to conduct your hiring the way you did. Now, CNN also argues that the board's order would violate its First Amendment rights. As the Supreme Court has held, a restoration order does not undermine a company's First Amendment rights. We are not asking the company to do anything other than to restore the employees that it unlawfully terminated. If the court has no further questions. What about the bargaining order itself? The bargaining order, Your Honor, thank you for asking, goes again to the fact that there was a represented unit here. I understand that. It's the Lee-Lumber problem in our circuit, where we said there has to be an explanation in going through all the factors. Well, again, in a situation like this, where there is a successor, the court has never required, and we have done some research to look into whether that has been required, and we have not found a case. So is there a difference? Lee-Lumber is an incumbent union. What would the logical difference between them be? The logical difference would be because of the invasive anti-union animus here, and the fact that CNN is trying to add to the unit members that do not belong in the unit. In every case like this, the court has affirmed the board. Do we have a case, a successor case, where we said that the Lee-Lumber standard doesn't apply? Let me, yes. There are several cases. There's Regal Cinema, which is 317F3300, in a situation where there was a refusal to bargain, and the replacement of a unionized employee, and the court enforced the board's restoration affirmative bargaining order, and the reinstatement of the employees at their previous employment terms, and the board says, even when reinstatement requires hiring a redundant set of employees. There's also Powers, Inc., versus NLRB, 40F3rd, at 409. It's a 1994 case, and it also literally copies what I just said about Regal. Of course, there's Dunkin' Donuts, which is a 2004 decision of the circuit. So, thanks. Thank you. We'll hear from the intervener. Okay, my name is Keith Bullock. I'm counsel for NABIT Local 31, the intervener in this case. I really have seven points, so I'm going to try to answer these very quickly. I have seven points. Let's go back to the beginning, the standard for joint employer. It's basically a calculation, A plus B equals C, A being two or more employers share or co-determine the essential terms and conditions of employment, B being that the putative joint employer meaningfully affects the employment relationship, such as hiring, firing, discipline, supervision, and direction. If you have A plus B, that equals a joint employer. A is derived from the Third Circuit's decision in BFI of Pennsylvania. B is derived from TLI and LARAP. Now, that's the standard. It's been the standard since 1984. It's been the standard both before 2002 and after 2002. It was the standard until the BFI case was decided last year or the year before. The notion that direct and immediate control is part of the standard, if you look at Airborne Express itself. I just ask, does that mean that you think that what the board said in the second BFI is wrong? Yes, because if you look at what Airborne Express says itself in the decision, we reject member Liebman's suggestion that the board should revisit its standard determining joint employer standards. Simply put, the board's test for determining whether two separate entities should be considered joint employers with respect to a specific group of employees has been settled for 20 years. So, they're talking about the established standard. They go on to say what that standard is. What are you reading from? Sorry. I'm sorry. This is footnote one of Airborne Express. Right. So, in Browning-Ferris, I guess I'll repeat what I said. Your argument about the precedent would be a challenge for us, but the board itself seems to have said, no, our precedent required direct and immediate control. Actually, that gets to my second point. Okay. Go for it. Okay, so let's move to that point. This whole thing about direct and immediate control is really equivalent over semantics. Well, semantics are critical in this context and in most legal contexts. But there's no principle of administrative law that says that an administrative agency must encamp specific words to achieve a certain conclusion. The board does not have to say complete and immediate control in order to find that. If the board's – if the substantial evidence of the decision – But we can't be confident. We can't be confident that the board would have found that had that been the test that they explicitly applied. It may be, as counsel said and as you're saying right now, it may be, and maybe they will, under a direct and immediate control standard. But I don't think we can be confident of that, and Chenery certainly tells us to be wary of doing something like that. Oh, I know you can't be confident, because not only did the board find, as Judge Pilar pointed out, the board found in certain circumstances, such as direction of employees, CNN exercised exclusive control. If you were a field tech and you went out to shoot a story, there were no TVS supervisors. There was only a CNN producer or a CNN reporter. And they didn't just tell a TVS employee, go shoot that story about a war hero. They said, set the camera up here. Point the camera that way. I want this in the background. Zoom in at this point and zoom out at this point at my direction. That is complete control. Obviously, if you have complete control, you pretty much have direct and immediate control. And that doesn't apply just to supervision and direction. That applies to assignments. CNN was the one dictating the assignments, because the record shows that even though TVS was still in someone to do a particular story, that came from CNN. And there's a footnote in the ALJ's decision which escapes me. The hiring and firing. I mean, you have some examples. The hiring and firing. Yes. What about that? The board points out in 2001, CNN required TVS to fire employees, to lay them off. That was sufficient to find direct control under DNF Industries, which was issued the year after Airborne Express. In that case, the putative joint employer called the nominal employer to lay off employees, I think, at least once or twice. And they found that to be highly credible, highly significant evidence. That was a year after Airborne Express. One of the members on that board was member Wilma Liebman, who authored the concurrence and dissent in Airborne Express. Now, if direct and immediate control was the standard, if that's what it was supposed to be at the time, one would think that Wilma Liebman would have said that in DNF Industries. But she didn't. They said, share or co-determine the essential terms and conditions of employment, plus meaningfully affect the employment relationship, which is in the board's decision in this case. That is the standard. At best, direct and immediate control is sort of an interpretation of what it means to meaningfully affect the employment relationship. So I've gone through three points here, so let me go to number four. The notion that if the joint employer argument falls, that the discriminatory successor argument falls is wrong. Because if you look at the board's- I think it's undermined is the point. It's not undermined either. A discriminatory successor discriminates in the context of hiring. A joint employer can discriminate in the context of firing. And if you look at the board's decision and at its order, the relevant language says, cease and desist from discharging bargaining unit employees from TVS. That's the context of being a joint employer. This is page 7266 of the joint appendix. It's page 24 of the board's decision. Discharging bargaining unit employees from TV and video services, its joint employer and predecessor employer at Washington, D.C., because of a union-affiliated representative status in TVS's operation or because of the union activities for membership. And that's the joint employer. It goes on. For otherwise discriminating against these employees to avoid having to recognize and bargain with NAVIT Local 11 and NAVIT Local 31. That is the discriminatory successor provision of the order. A discriminatory successor discriminates in the context of hiring. It doesn't discriminate in the context of firing. And the record shows that this whole facially neutral policy was rigged from the outgrowth. It didn't matter at the end whether it was facially neutral because the only thing that was consistent in the Bureau of Staffing Project is that TVS applicants had to go through every step. They had to jump every hurdle. They had to overcome every obstacle in order to get hired. Non-TVS applicants, such as applicants from CNN's other branches, didn't have to do that. And that's laid out in detail in the ALJ's decision. Applicants who had an initial screening, that was the first step. And you had to pass that initial screening in order to get interviewed by hiring managers. All the TVS applicants passed that initial step and they went on to the hiring managers. Not all the non-TVS applicants did. In fact, many of them were rejected because they lacked the minimum skills and experience to be considered by hiring managers. But as detailed both in the board's decision and in the ALJ's decision, they were still put in anyways. And many of them got hired. Then once you got to the hiring manager part, everyone was supposed to be interviewed by at least two managers. The thought was you have this 10-page guide with multiple factors and at the end you're supposed to rank. And they wanted to be able to average out the rankings and list them all. Not all of the TVS applicants were interviewed by two people. Some were only interviewed by one. Yet they still got hired. There were two TVS applicants who did not get interviewed by at least two managers. They were Sarah Pacheco and Tyrone Riggs. They were interviewed by one. Neither one of them was hired. Even though both of them had worked years, years for CNN and TVS. And even if you got past the whole hiring phase, then you have what they call the debriefing, which was when they ranked everybody and they put them in order and they had these butcher blocks, which are referred to throughout the decision, and managers were supposed to sit there and decide how do we figure out who gets hired when or who do we hire. And then it came out that the rankings that they did were changed. And nobody knows how they were changed or why. Because no CNN witness could testify as to how that happened. And to this regard, it's important to note the ALJ's credibility determinations. He rejected the credibility of every CNN witness because they couldn't testify as to the basic facts. Who was in the meeting? What did somebody say? When they testified, it sounded more like they were defending against a discriminatory successor challenge. So after you got through the final rankings, then you had to have your references checked. Everybody had to have professional references. The problem was that some of the non-TVS applicants, their professional references didn't check out. They sometimes ended up being negative. Or sometimes they didn't answer at all. So CNN deviated from its procedure and checked personal references so that they could get hired. They never did that for any TVS applicant. I'm sorry. I got a little... So let me get back to the historically... I'm sorry. I got wrapped up in that. Passion's good. The ALJ did address the historical unit argument and CNN's challenge. You can find it in his decision in the discussion of accretion because that's, in essence, what CNN was trying to do. They were trying to add job classifications to the historical unit, classifications like the informational technology section, the media coordinators. And the judge rejected that because, in essence, what you're doing, you're taking the accretion doctrine, which is whether you have community of interest with the unit, and trying to deny people the right to have union representation. They were adding people to the unit to deprive those in the unit of union representation, and that was wrong. Point six. The successorship standard is viewed at the time the elements are met. And that was in December of 2003 for D.C., January of 2004 for New York. And last but not least, your Honor's argument about the fact that a lot of incumbents were hired, and that should be something that should be considered, it's irrelevant. Because what the ALJ pointed out was that the single category that had the greatest success were the CNN applicants. Those people who came within CNN to get a job, all but one were hired. TVS applicants, there was a... And they were all non-union. And they were all non-union. TVS applicants were hired, but they were hired with CNN expressly tracking the number of TVS applicants who were being hired, because they were looking at the big number, and the big number was that wall-to-wall unit. So when it ended up being the historical unit, yes, we had a lot of people in it, but that wasn't what they were trying to do at the time. So with that, those are my seven points. So Member Miscamara says that if that was their goal, it was an abject failure. Same thing the Sixth Circuit said in Great Lake Chemical Court. That was their goal, but they screwed it up somewhere. And then they have to pay the price for it. Which case was that? Great Lakes Chemical Corporation. That's this good old circuit. I'm sorry? That's the D.C. Circuit. Is that the D.C. Circuit? I'm sorry, I was thinking of... Well, then, that's what the circuit said. Even better. That's even better. That's what the circuit said. I was trying to help you there. Thank you very much. That's what the circuit said. It's their loss. They screwed up. So with that, I thank you very much, and I would ask that this court actually enforce the board's decision in its entirety so that this case can now move on to its next step. Thank you very much for the time. All right. I know Petitioner doesn't have any time, but that doesn't seem to be relevant this morning. So the podium is yours. Well, thank you, Chief Judge Garland. My friend, Mr. Bullock, tried to make 7 points in 3 minutes. I think I'm just going to try to make 3 points in 2. First of all, on the joint employer issue, I think it's clear from the board's brief that the board's sole argument, at least in its brief, was that it has never required direct and immediate control. So to the extent that the board today tries to make the argument that that is, in fact, the standard that the board applied in this case and that that standard would support a determination that we're a joint employer, I would really be content to rest on Member Miscimera's dissent, which applied the direct and immediate control cases and focused on the relevant facts. First, TVS exercised control over hiring and firing to the extent that the board cited 3 examples of cases where CNN asked TVS to take disciplinary action. It's true that in 2 of those cases, TVS did take the requested action, and the third, CNN requested that an employee be fired, and, in fact, TVS did not fire the employee. And I think that those isolated examples are insufficient to give rise to direct and immediate control. TVS made assignments even to employees in the field, and to the extent that CNN did issue directions to camera operators to take certain shots and the like, under the direct and immediate control cases, that is insufficient, and I would really refer this Court to the AM Property case and the G. West case. So, again... Mr. Shanahan, in your briefs in this Court, you rely on footnote 7 in the board's decision quite, I mean, almost exclusively, but that wasn't part of the rehearing petition to the board. It wasn't mentioned. Yeah, but it doesn't need to be, and the motion for reconsideration focused appropriately on the remedial issues. On the issue of liability, I'm content to focus on footnote 7, and I would just note that to the extent that Mr. Bullock, in particular, tried to make the argument that TLI and Larico were also applying essentially the same standard, other than a reference to Larico at the beginning of the discussion in the board's opinion, you don't see the board discussing all of these other cases, like Southern California Gas and Flagstaff and TLI and AM Property and G. West, all of the cases in this body. And so, again, I think at a minimum, those are reasons why the court ought to allow the board on remand to apply the direct and immediate control standard, other than somehow trying to conclude, contrary to the board's approach here, that under that standard CNN still loses. I do want to say a bit about the successorship issue because the court had a lot of questions about it, and I want to make sure that I'm clear about what it is that we think that the court should do. If the court agrees that the blanket discrimination finding cannot stand, there is, of course, still the question of whether CNN is a bare successor because of historical bargaining. When you say the blanket discrimination, you mean with respect to firing or with respect to hiring? I mean the determination that CNN engaged in mass anti-union animus when it did not hire any of the former TBS employees who it didn't hire. And with respect to Mr. Bullock's point on this, that's not part of the joint employer decision. The joint employer decision is the firing question. Right. He was talking about successorship. Yes, that is correct. But on the issue of blanket discrimination, the board relied on the secretive termination of the contract as evidence that with regard to the subsequent hiring determinations, CNN acted with mass anti-union animus. And the best evidence of that is where that discussion is located. When you look at the discussion that I adverted to in my opening argument at pages 7260 to 7261, that is the first reason that's given in the successorship discussion. So that's why we think, at a minimum, the question for the board on remand would be whether the other evidence on which the board relied, the isolated statements that the board claims rise to the level of Section 8A1 violations and the alleged deviations from what was otherwise a neutral hiring plan, are sufficient to support the finding. We would respectfully submit that those are insufficient, but that would be for the board to consider once the improper consideration is taken away. Now, on the issue of the historic bargaining unit, I do want to come back to my earlier colloquy with Chief Judge Garland because I do think that when you look at the ALJ's underlying decision on this score, it isn't simply that the ALJ says that his determination rests on the discrimination finding and then goes on to conduct a correct analysis. If you take a look at the second column on page 7347 of the Joint Appendix, the ALJ basically proceeds to say, you know, looking at by analogy the cases involving the accretion doctrine, it's just inappropriate to apply any such analysis here because it would deprive former TBS employees of their statutory rights and the ALJ proceeds to say this is particularly true in light of my finding that if it were not for CNN's discrimination, team unit members would have constituted a majority of any CNN bargaining unit. So I don't think it's at all clear that once discrimination is taken off the table, the ALJ would have reached the same conclusion, but of course our core submission is that the board didn't engage in sufficient analysis that this court can be confident that the board would have concluded that this historic bargaining unit is appropriate. It is certainly true that, ironically, enough member of Ms. Camara on this point was clear that he thought that the historic bargaining unit was appropriate, but I don't think we can say that a majority of the board would have reached that conclusion, particularly in light of the fact that the board's historic practice in this industry has been to apply a wall-to-wall production unit, and after all that was the historic bargaining unit at TBS. It was a wall-to-wall unit, and so I think there are very compelling arguments as to why a wall-to-wall unit at CNN would be appropriate as well. And finally, my third point on the issue of the appropriate remedy. We're at three minutes, so you're a minute slower than you thought. And it's okay because he was five minutes slower. Well, I apologize for that. I was here a couple weeks ago when I think an interviewer finished within three minutes, which I think you said was some sort of D.C. Circuit record. But my last point on the bargaining remedy is simply that, as we say in our brief, the board provided no reasoned explanation for the bargaining remedy, and we believe that relying primarily on this court's decision in the Flamingo-Hilton case, the considerations such as employee turnover and the passage of time are appropriate in determining whether a bargaining remedy is appropriate. And so if this court sends the case back, and if the board on remand concludes that we are a bare successor without blanket discrimination, we certainly think at the minimum the board should provide a reasoned explanation as to why a bargaining remedy is appropriate to facilitate any further review by this court. And for those reasons, we submit that the board's order should be vacated. Thank you. We take the matter under submission. Thank you all.
judges: Garland, Kavanaugh, Pillard